UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. _____

BUNKERS INTERNATIONAL CORPORATION
110 Timberlachen Circle, Suite 1012
Lake Mary, FL 32746

       Plaintiff,

v.

CARREIRA PITTI, P.C.
55 St. No. 225 Carpit Buildings, El Cangrejo
P.O. Box 0819-0068 El Dorado
Panama, Republic of Panama

       Defendant,

and

HOSTOPIA.COM INC
d/b/a APLUS.NET
110 East Broward Boulevard, Suite 1650
Fort Lauderdale, FL 33301

       Garnishee.

_____/

**VERIFIED COMPLAINT WITH
REQUEST FOR WRIT OF MARITIME GARNISHMENT**

    Plaintiff Bunkers International Corporation ("Bunkers International") sues Carreira Pitti,

P.C. ("Carreira Pitti") *quasi in rem* as follows:

**Jurisdiction and Venue**

    1.    This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. §

1333, Supplemental Rule B, and Fed. R. Civ. P. 9(h).

2.      Venue is proper in this Court because the Garnishee is located and can be found in this District.  Defendant cannot be not found in this District within the meaning of Supplemental Rule B.

### The Parties

3.      Bunkers International is a corporation with its principal place of business in Lake Mary, Florida.  Bunkers International provides physical supply, trading, and brokering services to marine customers around the world.

4.      Carreira Pitti is a law firm with its sole offices in Panama City, Panama.

5.      Hostopia.com Inc, d/b/a Aplus.net ("Hostopia") is a domain name registrar with its principal place of business in Fort Lauderdale, Florida.

### Count I: Breach of Contract

6.      Plaintiff incorporates the above paragraphs as if specifically set forth herein.

7.      On or about May 27, 2010, Bunkers International provided marine oil (bunkers) to the M/V *OCEAN BLUE 1* ("Vessel") at Maracaibo, Venezuela, on the order of Carreira Pitti (acting as agent and/or charterer and /or manager of the Vessel), and pursuant to maritime contracts between Bunkers International and Carreira Pitti, at an agreed price of $34,245.54.

8.      The marine contracts between Bunkers International and Carreira Pitti incorporated Bunkers International's General Terms and Conditions.

9.      Prior to physically providing the bunkers to the Vessel, Bunkers International sent confirmation of the bunkers order to Carreira Pitti (Exhibit "A" hereto).  The confirmation specifically stated as follows:

> Seller's General Terms and Conditions of Sale are fully incorporated herein by this reference and are available upon written request or on the Internet at www.bunkersinternational.com.  This Confirmation of Contract and Seller's General Terms and Conditions of Sale shall be governed by the laws of the United

States of America and the State of Florida, without reference to any conflict of laws or choice of law rules which could otherwise result in the application of the laws of another jurisdiction.

Buyer warrants that the vessel's Owner has given Buyer express authority to purchase the product and that the Buyer is authorized by the Vessel's Owners, Operators, Managers, Agents, Ship Masters, Disponent Owners, and/or Charterers to pledge the vessel's credit, as defined by section 971 of the United States Federal Maritime Lien Act. In consideration of the Seller's provision of product to the vessel, it is agreed that United States law controls as if Seller's provision of product was made to the vessel in the United States. Seller is relying on the credit of the vessel and by providing product to the vessel Seller expressly an in-rem maritime lien against the vessel as provided under U.S law.

Any attempt to avoid or impair Seller's lien against the vessel shall be null, void and of no effect. No disclaimer of lien or liability, whether by stamp or other form, shall operate to alter, change or waive Seller's maritime lien against the vessel or the vessel's liability in-rem for the debt resulting from the provision of product to it. Buyer further warrants that it has informed the vessel's Owners of this Confirmation of Contract and Seller's General Terms and Conditions of Sale.

We will assume that all parties agree to this confirmation unless we are notified in writing immediately after the date and time that this message is sent via email or fax.

Please advise us immediately if any part of this confirmation is unclear or incorrect.

We thank you for the opportunity to conclude this stem.

10.    The bunkers were delivered to the Vessel on May 27, 2010, and the bunker receipt certificate was signed by the Vessel's Master (Exhibit "B"). There were no disclaimer stamps placed on the bunker receipt by the Vessel and the Vessel's Master signed with full authority, accepting the bunkers.

11.    Bunkers International issued its invoice in the amount of $34,245.54, on June 15, 2010 with payment terms that the invoice was due on receipt (Exhibit "C").

12.    Carreira Pitti acknowledged receipt of the invoice and promised payment.

13.    Carreira Pitti failed to pay the amount owed on the due date.

14.     Pursuant to Bunkers International's General Terms and Conditions (Exhibit "D"), which are specifically incorporated into the sales contract, past due amounts accrue interest at the rate of 2% per month.  Additionally, amounts past due more than 15 days incur a one-time administrative fee of 5% of the amount past due.  Bunkers International's General Terms and Conditions further provide as follows:

11.     FINANCIAL RESPONSIBILITY

All sales of Marine Fuel hereunder are made on the credit of the Vessel as well as on the credit of the BUYER.  The SELLER will have and assert any and all maritime liens available to it against the Vessel, wherever found, for the full amount of the delivered price of the Marine Fuel supplied to such vessel by the SELLER, plus accrued interest and collection costs.  If the BUYER in any way breaches the Agreement, defaults in the payment of any indebtedness to the SELLER (whether arising out of the Agreement or otherwise) or become bankrupt or insolvent, or if the SELLER at any time considers the financial situation, position and or condition of the BUYER to be unsatisfactory, then the SELLER may, in addition to any other rights and remedies it may have, cancel or suspend deliveries hereunder until such time as the BUYER remedies such breach or default and/or provides suitable additional security and/or guarantees acceptable to the SELLER.

12.     AGENTS

If the Agreement is concluded between the SELLER and an agent acting for or on behalf of a principals (whether disclosed or undisclosed), as BUYER(s), then such agent shall be jointly and severally liable with the BUYER(s), as a principal and not as an agent, for the due and proper performance of the Agreement and the prompt and punctual payment of all amounts due hereunder.

…

19.     GOVERNING LAW

These general terms and conditions of sale shall be governed by the laws of the United States of America and the State of Florida, without reference to any conflict of laws or choice of law rules which could otherwise result in the application of the laws of another jurisdiction.  The laws of the United States shall apply with respect to the existence of a maritime lien, regardless of the country in which this Agreement is deemed made, the Marine Fuel is delivered or SELLER takes legal action.  SELLER shall be entitled to assert its lien, attachment or other rights in any jurisdiction where it finds the Vessel or other assets of BUYER.

Any disputes concerning quality or quantity shall only be resolved in the United States District Court for the Middle District of Florida, Tampa Division, or the Circuit Court of Hillsborough County, Florida. Disputes over payment and collection may be resolved, at SELLER's sole option, in the United States District Court for the Middle District of Florida, Tampa Division, or the Circuit Court of Hillsborough County, Florida or in the courts of any jurisdiction where either the Vessel or an asset of the BUYER may be found. BUYER hereby irrevocably submits to the jurisdiction of any such court, and irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum or its foreign equivalent to the maintenance of any action in any such court. BUYER and SELLER waive any right either of them might have to a trial by jury in any legal proceeding arising from or related to the Agreement or these general terms and conditions of sale.

15.     Despite repeated demand, has failed and/or refused to pay Bunkers International for the bunkers ordered by Carreira Pitti.

16.     Accordingly, Carreira Pitti is liable to Bunkers International for the principal amount due, plus interest of 2% per month from the date of delivery of the bunkers through the date of judgment, plus a one-time 5% administrative fee.

17.     This Court therefore should enter judgment against Carreira Pitti, as set out in the Prayer for Relief, *infra*.

### Count II: Maritime Attachment and Garnishment (Rule B)

18.     Plaintiff incorporates the above paragraphs as if specifically set forth herein.

19.     On information and belief, Carreira Pitti has property within this District; to wit, the domain name registration for the Internet domain <panamalaw.com>, which is registered with Hostopia. Hostopia operates, and may be served within, this District at its offices in Fort Lauderdale, Florida.

20.     Carreira Pitti cannot be found within this District pursuant to Supplemental Rule B, and this Court therefore should issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B attaching all of

Carreira Pitti's tangible or intangible property or any other funds held by Hostopia on behalf of Carreira Pitti, up to at least the amount demanded herein to secure Bunkers International's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint, as more fully set out below.

### Prayer for Relief

WHEREFORE, Plaintiff prays:

A.      That in response to Count I, judgment be entered against Carreira Pitti in the amount of at least $34,245.54, plus contractual interest running from June 15, 2010 to the date of judgment at the daily rate of $22.5176, plus contractual attorneys fees and costs, plus all other fees and costs as provided in the parties' contract (including Bunkers International's sales terms and conditions, incorporated in the contract), plus the costs of this action;

B.      That in response to Count II, since Defendant Carreira Pitti cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Carreira Pitti's tangible or intangible property or any other funds held by any garnishee, up to the amount of at least the amount demanded herein to secure Bunkers International's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint; and

/

[continued on next page]

/

      C.     That this Court award Plaintiff such other and further relief that this Court deems just and proper.

Dated: December 29, 2011.

Respectfully Submitted,

STROUP & MARTIN, P.A.
*Attorneys for Plaintiff*
119 Southeast 12th Street
Fort Lauderdale, Florida 33316-1813
Tel:   (954) 462-8808
Fax:   (954) 462-0278
Email: jstroup@strouplaw.com
Email: fmartin@strouplaw.com

BY:  */s/ James W. Stroup*
      JAMES W. STROUP
      Florida Bar No. 0842117

BY:  */s/ Farris James Martin, III*
      FARRIS JAMES MARTIN, III
      Florida Bar No. 0879916

Counsel for Bunkers International Corp.

OF COUNSEL:
J. Stephen Simms
Marios J. Monopolis
SIMMS SHOWERS LLP
20 South Charles Street, Suite 702
Baltimore, Maryland 21201
Tel:   (410) 783-5795
Fax:   (410) 510-1789
Email: jssimms@simmsshowers.com
Email: mjmonopolis@simmsshowers.com

## VERIFICATION

I am an associate of the law firm Simms Showers LLP, counsel to Plaintiff Bunkers International.

The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the records of Bunkers International made available to me by Bunkers International. Authorized officers of Bunkers International are not readily available in this District to make verifications on Bunkers International's behalf. I am authorized to make this verification on Bunkers International's behalf.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in this District of Carreira Pitti. There is no record of any general or resident agent authorized to accept service of process for Carreira Pitti in this District.

Pursuant to 28 U.S.C. § 1746(1), I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on December 29, 2011.

Marios J. Monopolis

# EXHIBIT "A"

# BUNKERS INTERNATIONAL

**110 Timberlachen Ave * Suite 1012 * Lake Mary, Florida 32746 * USA**
**Tel 1-407-328-7757 * Fax 1-407-328-0045 * Email bunkers@bellsouth.net**

## AMENDED **CONFIRMATION OF BUNKER STEM**

TO: Carreira Piti – Panama C/O Overseas Shipping – Piraeus      Attn: Capt. Costas
RE: **M/V OCEAN BLUE I**      Date: May 27, 2010

We are pleased to confirm the following bunker nomination, placed with Buyer's authority in accordance with Seller's General Terms and Conditions of Sale in effect at the time of sale (available upon written request).

| | |
|---|---|
| VESSEL / IMO #: | **M/V OCEAN BLUE I / 7502033** |
| PORT: | Maracaibo Anchorage |
| DATE: | May 28, 2010 |
| QNTY/GRADE: | 30 mt MGO – ISO DMA |
| PRICE: | *US$ 774.00 mtw* |
| DELIVERY METHOD: | barge |
| DELIVERY CHARGE: | US$ 8,000.00 |
| SELLER: | Bunkers International Corp. |
| BUYER: | **Carreira Piti - Panama, the vessel OCEAN BLUE I, its Master and/or Owners and/or Charterers and/or Managing Agents, jointly and separately.** |
| PAYMENT TERMS: | Payment, without offset, is due upon receipt of invoice / BDR. Late payments incur interest/late charges at the rate of 2% per month, pro-rata |
| AGENT: | Vinodol - Maracaibo |
| COMMENTS: | As PDVSA does not honor claims, we do not guaranty quality, Quantity, or performance, I.E. we accept no claims. |

*Prices in Venezuela are valid for 7 days from day of nomination to day of bunkering. If bunkering takes place after the 7 day validity, the price in effect on the day of delivery is charged.

Any overtime, demurrage, wharfage, cancellation fees, downgrades, taxes and/or other local fees, if applicable, are for buyer's account unless otherwise agreed upon in advance.

Seller's General Terms and Conditions of Sale are fully incorporated herein by this reference and are available upon written request or on the Internet at **www.bunkersinternational.com.** This Confirmation of Contract and Seller's General Terms and Conditions of Sale shall be governed by the laws of the United States of America and the State of Florida, without reference to any conflict of laws or choice of law rules which could otherwise result in the application of the laws of another jurisdiction.

Buyer warrants that the vessel's Owner has given Buyer express authority to purchase the product and that the Buyer is authorized by the Vessel's Owners, Operators, Managers, Agents, Ship Masters, Disponent Owners, and/or Charterers to pledge the vessel's credit, as defined by section 971 of the United States Federal Maritime Lien Act. In consideration of the Seller's provision of product to the vessel, it is agreed that United States law controls as if Seller's provision of product was made to the vessel in the United States. Seller is relying on the credit of the vessel and by providing product to the vessel Seller expressly an in-rem maritime lien against the vessel as provided under U.S law.

Any attempt to avoid or impair Seller's lien against the vessel shall be null, void and of no effect. No disclaimer of lien or liability, whether by stamp or other form, shall operate to alter, change or waive Seller's maritime lien against the vessel or the vessel's liability in-rem for the debt resulting from the provision of product to it. Buyer further warrants that it has informed the vessel's Owners of this Confirmation of Contract and Seller's General Terms and Conditions of Sale.

We will assume that all parties agree to this confirmation unless we are notified in writing immediately after the date and time that this message is sent via email or fax.

Please advise us immediately if any part of this confirmation is unclear or incorrect.

We thank you for the opportunity to conclude this stem.

Best Regards, Bill Preusch

EXHIBIT "B"

Exhibit B - Page 1 of 1

**COMMERCHAMP, S.A.**
(Filial de PETROLEOS DE VENEZUELA)

**Boleta de combustible marino entregado**
(bunker delivery note)

Nº **003111**

| CLIENTE (client) | NOMINACION (nomination) | FECHA (date) |
|---|---|---|
| Bonren International Corp | SAI39939 | 23 05 2010 |

| BUQUE (vessel) | IMO Nº | BANDERA (flag) | PUERTO DE ENTREGA (delivery port) |
|---|---|---|---|
| Ocean Blue 1 | 7503033 | Panama | Off Shore Maracaibo |

METODO DE ENTREGA (delivery method): ☐ CAMION (tank truck)   ☒ GABARRA (barge)   ☐ TUBERIA (pipeline)

### CARGA (loading)

| PRODUCTO (product) | INICIO (start) | | | FINAL (finish) | | | TEMP °C | FACTOR CORRECC. (corr. factor) |
|---|---|---|---|---|---|---|---|---|
| | FECHA (date) | HORA (time) | LITROS (litros) | FECHA (date) | HORA (time) | LITROS (litros) | | |
| M60 | 27-05-10 | 10:40 | | 27-05-10 | 13:30 | | 34.0 | 0.9891 |

### CALIDAD (quality)

| | | | |
|---|---|---|---|
| GRAVEDAD API A 60 °F. (15.6 °C) (A.PI gravity at 60 °F) | 33.2 | GRAVEDAD ESPECIFICA A 60 °F (specific gravity at 60 °F) | 0.8591 |
| PUNTO DE INFLAMACION (°C) (flash point) | 74 | PUNTO DE FLUIDEZ (°C) (pour point) | 15 |
| VISCOSIDAD A 50 °C (cSt) (viscosity) | 3.373 | AZUFRE (% PESO) (sulphur wt.%) | 1.34 |
| AGUA Y SEDIMENTO (% VOL) (B.S. & water) | 0.05 | DENSITY @ 15 °C | 0.8591 |

### CANTIDAD (quantity)

| TONELADAS METRICAS (metric tons) | 30.033 | LITROS BRUTOS (gross litres) | 254869 | LITROS NETOS (net litres) | 219 |
|---|---|---|---|---|---|
| | | | | | 34,978.39 |

**MUESTRA SELLADA (sample seal nos.)**

MARPOL ANNEX VI Retained Sample — 969659

Vessel Retained Sample — 969650

COMMERCHAMP Retained Sample No. 1 — 969655

COMMERCHAMP Retained Sample No. 2 — 969659

HE RECIBIDO 2 MUESTRAS SEGUN LO INDICADO (I confirm receipt of the 2 samples indicated)

EL COMBUSTIBLE MARINO SUMINISTRADO, ESTA EN CONFORMIDAD A LA REGULACION 14(1).O (4)(A) Y LA 18(1) DEL ANEXO VI DE MARPOL 73/78
(The fuel supplied in this delivery is in conformity with Regulation 14(1) or (4)(a) and Regulation 18(1) of Annex VI of MARPOL 73/78)

### OBSERVACIONES (remarks)

| POR EL BUQUE (by vessel) | POR COMMERCHAMP, S.A. (by COMMERCHAMP S.A.) |
|---|---|
| FIRMA (signature) | FIRMA (signature) |
| NOMBRE (name) | NOMBRE (name) |
| | PRIMER INGENIERO (chief engineer) |

MV OCEAN BLUE PANAMA MASTER

I16 - A 7 08 - 2006

EXHIBIT "C"



Exhibit C - Page 1 of 1

THANK YOU
FOR YOUR BUSINESS

# INVOICE

| DATE FUELED | INVOICE # |
|---|---|
| 5/27/2010 | BKAINV02791 |

**BILL TO**
CARREIRA PITTI P.C., ATTORNEYS-AT-LAW
and/or Master, Owners, Operators
Charterers, Managers, Managing Agents

and VESSEL:   OCEAN BLUE I

**SHIP TO**
CARREIRA PITTI P.C., ATTORNEYS-AT-LAW
55TH STREET NO. 225, CARPIT BUILDING
EL CANGREJO
PANAMA CITY
REPUBLIC OF PANAMA

| DEAL | VESSEL | Port | TERMS | DUE DATE | REP | INVOICE DATE |
|---|---|---|---|---|---|---|
| 7828 | OCEAN BLUE I | MARACAIBO | UPON RECEIPT | 6/15/2010 | WEP | 6/15/2010 |

| DESCRIPTION | PRODUCT | QUANTITY | RATE | AMOUNT |
|---|---|---|---|---|
| BUNKER DELIVERY TO THE OCEAN BLUE I AT MARACAIBO ON MAY 27, 2010. | MGO | 30.0330 | $ 774.00000 | $ 23,245.54 |
|  | BARGING | 1.0000 | $ 8,000.00000 | $ 8,000.00 |
| ESTIMATED AMOUNT FOR ADDITIONAL TUG | TUG | 1.0000 | $ 3,000.00000 | $ 3,000.00 |

6/15/10
Scanned to Carreirapitti
Sent Priority Mail
See next page's

NO BANK
DEDUCTIONS ALLOWED

WHEN THE ACTUAL INVOICE IS RECEIVED FOR ADDITIONAL TUG, THEN
ADDITIONAL INVOICE/CREDIT WILL BE ISSUED.

| | Total | $34,245.54 |
|---|---|---|

**INTERNATIONAL WIRES:**
Wachovia Bank, N.A.
11 Penn Plaza
NY NY 10038
Account: 2000034531886
SWIFT:  PNBPUS33
Credit: Bunkers International Corp
110 Timberlachen Cir. Ste 1012 Lake Mary, Fl 32746

**USA WIRES:**
Wachovia Bank, N.A.
214 N. Hogan Street   Jacksonville, FL
Account: 2000034531886
WIRE ABA: 063000021
ACH: 063107513
Credit: Bunkers International Corp
110 Timberlachen Cir. Ste 1012 Lake Mary, Fl 32746

TEL: (407) 328-7757  FAX: (407) 328-0045  EMAIL: bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

# EXHIBIT "D"

# BUNKERS INTERNATIONAL

**Fueling Global Trade**

---

**BUNKERS INTERNATIONAL CORPORATION**
GENERAL TERMS AND CONDITIONS OF SALE FOR MARINE FUEL

Effective August 1st, 2007

1. Definitions

   In the agreement (hereinafter defined) the following terms shall have the following meanings:

   a. "the Agreement" means the Special Terms and General Terms;
   b. "barrel" or "bbl" means 42 U.S. standard gallons at 60 Fahrenheit;
   c. "BUYER" means a party obligated to buy Marine Fuel under this Agreement;
   d. "Delivery Date" means the date on which the Marine Fuel is to be delivered to the vessel by SELLER;
   e. "gallon" means a U.S. standard gallon of 231 cubic inches at 60 Fahrenheit;
   f. "General Terms" means these Bunkers International General Terms and Conditions of the Sale of Marine Fuel;
   g. "Marine Fuel" means the type(s) , quantity(ies) and commercial grade(s) of bunker fuel oil , intermediate fuel oil, ("IFO") , marine diesel oil ("MDO"), marine gas oil ("MGO") and/or other materials or petroleum products specified in the Special Terms which SELLER has agreed to sell to BUYER;
   h. "metric ton" or "MT" means a total of 2204,6234 pounds avoirdupois;
   i. "SELLER" means Bunkers International Corp.
   j. "Special Terms" means any form of agreement including, without limitation, a letter, fax letter or electronic mail, which to any extent incorporates by reference or is subject to the General Terms, including our confirmation or nomination of bunker stem.
   k. "Supplier" means the person or entity from whom the SELLER procures Marine Fuel for resale to the BUYER;
   l. "Supply Port" means the port at which the Marine Fuel purchased by the BUYER is to be delivered to the Vessel; and
   m. "Vessel" means the marine vessel or vessels to which the Marine Fuel purchased by the BUYER is to be delivered.

---

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA



**BUNKERS INTERNATIONAL**
Fueling Global Trade

2. Measurements, Tests, and Sampling

The quantity of Marine Fuel Delivered shall be measured by the SELLER or its Supplier and these measurements will be final and binding. Such quantity shall be determined by shore tank gauges or, if such is not available, by barge calibrated meter or, if such is not available, by barge or truck, volume measurement figures.

The BUYER may be present or represented by a properly accredited agent at all measurements, If BUYER is not present for before and after measurements of delivery equipment, then BUYER waives their rights to contest volume figures. Absent manifest error, the SELLER's determination of quantity shall be conclusive.

All measurements shall be adjusted to barrels or metric tons at 60 Fahrenheit temperature. All such adjustments shall be made in accordance with the latest joint Petroleum Measurement Tables of the American Petroleum Institute ("API"), the American Society of Testing and Materials ("ASTM") and the Institute of Petroleum ("IP") designated API D-2540, ASTM D-1250 and IP 200/52, respectively, whichever is in use at the Supply Port.

At least two commercial samples of the Marine Fuel shall be taken at the time of delivery from the terminal shore tank, load pipeline, delivery barge, or truck as appropriate, and sealed. These samples shall be considered the official commercial samples and the only representative samples of the delivery. The samples shall be taken by line-sampling devices, where available. One sealed sample shall be handed to the Vessel's representative, and the other sample or samples retained by the SELLER or its Supplier. By request of the buyer a fourth Marpol 73/78 Annex VI sample may be taken if physical supplier is in agreement and per their policy. The Marpol sample may only be used for purposes of confirming the sulphur content of the marine fuel and such other matters as are specifically set forth in Marpol Annex VI, Regulation 18. For any commercial purposes the "official commercial samples" from the physical supplier will be used. Tests to determine quality shall be made only from SELLERS' or supplier's samples and shall be made in accordance with standard test methods specified in the official publications of either the API, ASTM. IP or specifications as agreed in written confirmation of sale on the date of the Agreement. If vessel presents a sample from on-board the vessel, this sample may be received by SELLER or supplier, but this sample will not be recognized as an official retain sample of the delivery, and its tests results will not be recognized or accepted by SELLER and its suppliers as representative of the fuel delivered.

**TEL**: (407) 328-7757 **FAX**: (407) 328-0045 **EMAIL**: bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com



3. Price

The price of Marine Fuel sold and delivered hereunder shall be the price set forth in the Special Terms. Unless otherwise agreed and set forth in the Special Terms, all prices are for delivery ex tank at the Supply Port and are exclusive of all delivery costs and all taxes, duties, fees or other assessments imposed or levied by any government authority (whether at the Supply Port or otherwise) or instrumentality thereof.

4. Barging

If the Vessel requires delivery by barge, then SELLER shall furnish this service within normal harbor limits at the Supply Port when and where SELLER or its Supplier has the necessary barging facilities available to effect delivery. BUYER shall pay all barging charges at the rates established by the SELLER from time to time plus transportation taxes, if any. If steam is required to effect delivery, the Vessel shall provide such steam free-of-charge. If tug pumping is required, then the BUYER shall pay all tug-pumping charges.

5. Payment Terms

Unless otherwise provided in the Special Terms, all sales shall be on a cash in advance or irrevocable letter of credit basis. All letters of credit procured by the BUYER in favor of the SELLER shall be in form and substance acceptable to the SELLER and issued only by a bank acceptable to the SELLER.

Payment to SELLER for all sales of Marine Fuel and for all charges related thereto (including, without limitation, delivery and any additional charges), if any, shall be made in full, without any right of set-off, discount or deduction. Payment shall be made in U.S. dollars by means of telegraphic transfer to the bank identified in the Special Terms or in the SELLER's invoice, as the case may be, for deposit to the SELLER's account as specified therein. Such transfer shall quote SELLER's invoice or order number, BUYER's name, Vessel supplied and SELLER's account number to which funds shall be deposited.

If the SELLER has extended credit to the BUYER, and if the applicable period expires on a Saturday, Sunday or any other day when the SELLER's bank is closed for business, then the BUYER shall arrange for the payment in question to be made within such shorter period as will enable the payment to have been made by the last day within the applicable credit period when the SELLER's bank was open for business. SELLER has the right to withdraw any credit terms offered, verbally or written, without prejudice at anytime before or after delivery, and demand immediate settlement of any and all invoices outstanding.

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com

**BUNKERS INTERNATIONAL**

Fueling Global Trade

6. Deliveries

Deliveries of Marine Fuel shall be made during normal working hours on normal working days at the Supply Port. If the BUYER requires delivery or causes delivery to be made at any time other than during such periods, then the BUYER shall pay to the SELLER any addition expenses or cost incurred by the SELLER or its Supplier as result of such delivery.

If a delivery permit is required from any government authority or any instrumentality thereof, or from any public or private port authority, for any delivery of Marine Fuel hereunder, then the BUYER shall be responsible for obtaining same. No deliveries shall be made until such time as the BUYER has obtained all required delivery permits.

The BUYER shall give the SELLER written notice at least forty-eight (48) hours prior to the Delivery Date of the estimated time(s) on such date the Vessel will be ready to receive the Marine Fuel purchased by the BUYER. In such notice the BUYER shall, is necessary, advise the SELLER of any special condition, peculiarity, deficiency or defect of or with respect to the Vessel or its equipment which might delay, hinder or otherwise affect the mooring, unmooring or bunkering of the Vessel. If the BUYER fails to provide this notice and the Vessel for whatever reason is unable or refuses to accept Delivery Date, or if the BUYER provides such notice but request an extension to the Delivery Date of more than twenty-four (24) hours after twelve noon on such date, then the SELLER may, at its option, deliver the Marine Fuel to the Vessel at the requested new delivery time on a best efforts basis, suspend delivery subject to BUYER's agreement to a new price for the Marine Fuel, or cancel the delivery altogether, with or without prejudice to SELLER's rights under this Agreement.

The BUYER shall make all connections and disconnections between the delivery hose and the Vessel's intake pipe, and shall render all necessary and reasonable assistance and provide sufficient tankage and equipment to receive all deliveries of Marine Fuel supplied under the Agreement. All mooring and unmooring charges and port dues, if any shall be paid by the BUYER.

The BUYER shall be charged a minimum fee of $5000.00 for cancellation of delivery in addition to any and all costs incurred by the SELLER.

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com



**BUNKERS INTERNATIONAL**

Fueling Global Trade

7. Title and Risk

SELLER has good and marketable title to all Marine Fuels delivered hereunder. Delivery will be complete and risk of loss will pass to BUYER as the Marine Fuels pass the intake flange of BUYER's vessel or nominated barge. The Marine Fuels shall remain the SELLER's property until BUYER has paid for them in full. Until that time BUYER shall hold them as bailee, store them in such a way that they can be identified as SELLER's property, and keep them separate from BUYER's own property and the property of any other person. Although the Marine Fuels remain the SELLER's property until paid for, they shall be at BUYER's risk from the time of delivery and BUYER shall insure them against loss or damage accordingly and in the event of such loss or damage it shall hold the proceeds of such insurance on behalf of SELLER as trustee of SELLER.

BUYER's rights to possession of the Marine Fuels shall cease if: a Buyer has not paid for the Marine Fuels in full by the expiry of any credit period allowed by the SELLER or b) BUYER is declared bankrupt or make a any proposal to his creditors of a reorganization or other voluntary arrangement, or c) A receiver, liquidator, or administrator is appointed in respect of BUYER's business. Upon cessation of BUYER's right to possession of the Marine Fuels in accordance with clause 17.2, the BUYER  shall at his own expense make the Marine Fuels  available to the SELLER and allow SELLER  to repossess them, or repossess other Marine Fuels onboard the vessel that are of like nature, value, and quality, should Vessel have consumed SELLER's fuel.  BUYER hereby grants SELLER, his agents and employees an irrevocable license to enter any premises where the Marine Fuels are stored in order to repossess them at any time.

8. Demurrage and Delays

Neither the SELLER nor its Supplier shall be liable for any demurrage or loss incurred by the BUYER or the Vessel caused directly or indirectly by delays due to or resulting from weather (whether unusual or not), local congestion at the Supply Port affecting the SELLER's delivery facilities (or those of its Supplier), the prior commitment, nonavailability and/or malfunction of delivery barges, or any event of Force Majeure. The BUYER shall be liable for demurrage at rates established by the SELLER and for losses incurred by the SELLER as a result of any delay caused directly or indirectly by the BUYER or the Vessel in the use of delivery or barging facilities or in vacating a berth.

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA


**BUNKERS INTERNATIONAL**
Fueling Global Trade

9. Warranties

BUYER is solely responsible for specifying to the SELLER the type, grade and quantity of Marine Fuel to be supplied under the Agreement. SELLER warrants only that the Marine Fuel supplied shall conform to the specifications stated in the Special Terms and further that SELLER will convey to BUYER title thereto free and clear of all taxes, liens and encumbrances existing or in favor of any third parties. OTHER THAN THOSE EXPRESSLY STATED HEREIN, THERE ARE NO GUARANTEES OR WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS, OR SUITABILITY OF THE MARINE FUEL FOR ANY PARTICULAR PURPOSE, OR OTHERWISE.

10. Claims

Any claims as to shortage in quantity, defects in quality, or otherwise shall be made in writing by the BUYER within Fourteen (14) days after the delivery in question, otherwise all such claims shall be deemed to have been waived in their entirety. Any claims, notices, or information written on the delivery receipt or written in form of a memo or letter of protest from the BUYER'S vessel or crew at time of the delivery will not constitute notification of a claim by BUYER, nor will any signatures by SELLER'S or Supplier's delivery crew on any such documents constitute an acceptance or acknowledgment of BUYER'S claim. All claims by the BUYER are subject to the limitations set out in article 14.

11. Financial Responsibility

All sales of Marine Fuel hereunder are made on the credit of the Vessel as well as on the credit of the BUYER. The SELLER will have and assert any and all maritime liens available to it against the Vessel, wherever found, for the full amount of the delivered price of the Marine Fuel supplied to such vessel by the SELLER, plus accrued interest and collection costs. If the BUYER in any way breaches the Agreement, defaults in the payment of any indebtedness to the SELLER (whether arising out of the Agreement or otherwise) or become bankrupt or insolvent, or if the SELLER at any time considers the financial situation, position and or condition of the BUYER to be unsatisfactory, then the SELLER may, in addition to any other rights and remedies it may have, cancel or suspend deliveries hereunder until such time as the BUYER remedies such breach or default and/or provides suitable additional security and/or guarantees acceptable to the SELLER.

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA

www.bunkersinternational.com


**BUNKERS INTERNATIONAL**
Fueling Global Trade

12. Agents

If the Agreement is concluded between the SELLER and an agent acting for or on behalf of a principals (whether disclosed or undisclosed), as BUYER(s), then such agent shall be jointly and severally liable with the BUYER(s), as a principal and not as an agent, for the due and proper performance of the Agreement and the prompt and punctual payment of all amounts due hereunder.

13. Interest and Collections

Without limitation to SELLER's right hereunder or otherwise, any payment not made when due shall bear interest at the rate of (I) two percent  (2 %) per month, or (ii) the maximum rate allowed by law, running from the due date until the date payment is received by SELLER's bank.

In the event SELLER institutes legal proceedings for collection of payments not made by BUYER when due, all expenses incurred by SELLER in connection with such proceedings (including without limitation, attorney's fees and court costs) shall be for BUYER's account.

14. Limitation of Liability

SELLER and its Supplier shall not be liable for special, indirect, punitive or exemplary damages of any kind arising out of or in connection with the performance or non-performance of the Agreement.

15. Environmental Protection

BUYER represents and warrants that the Vessel is properly equipped, maintained and operated so as to avoid the escape, spillage or discharge of oil (a "spill") at the time of all deliveries of Marine Fuel hereunder. If a spill does occur while Marine Fuel is being delivered by the SELLER or its Supplier to the BUYER and the Vessel, then BUYER shall promptly take such action as is reasonably necessary to remove the oil and mitigate the effects of such spill. However, notwithstanding the cause of such spill, SELLER and/or its Supplier is hereby authorized, at its/ their option, to take such measures and incur such expenses (whether by employing its own resources or by contracting with others) as are reasonably necessary to remove the oil and mitigate the effects of such spill. In the event SELLER and/or its Supplier have exercised its/their option to remove the oil and mitigate the effect of such spill, BUYER agrees to cooperate and render such assistance as is reasonably required by SELLER and/or its Supplier. All expenses, damages, costs, fines and penalties arising from a spill or any pollution caused thereby shall by paid by the party that caused such spill by a negligent act or omission. If both parties have acted negligently, all such expenses, damages, costs, fines and penalties shall be divided between the parties in accordance with their respective degree of negligence. BUYER shall furnish to the SELLER and/ or Supplier photocopies of all

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA



**BUNKERS INTERNATIONAL**
Fueling Global Trade

documents and any other information concerning any spill, or a program for the prevention thereof that is reasonably required by the SELLER and/or its Supplier, or required by any regulation application at the Supply Port on the Delivery Date.

16. Force Majeure

Neither the BUYER nor the SELLER nor its Supplier shall be responsible for damages caused by delays, failure to perform in whole or in part any obligation hereunder (other than the payment of money), or noncompliance with any of the terms hereof when such delay, failure or noncompliance is due to or result from causes beyond the reasonable control of the affected party  including, without limitation, acts of God, fires, floods, perils of sea,  war (declared or un-declared), embargos, accidents,  strikes, labor disputes, failure or shortage of vessel or barge service normally available to the SELLER or its Supplier to, breakdown of or damage to, or shortage in facilities used for production, refining or transportation of Marine Fuel, acts in compliance with requests of any governmental authority or person purporting to act thereof, or any other similar causes. Notwithstanding the provision of its Article, the BUYER shall not be relieved of any obligation to make payments for all sums due hereunder.

17. Notices

All notices, statements or other communications to be given by the BUYER to the SELLER or vice-versa shall be sufficient if given in writing by registered airmail, fax, or telegram as follows:

To the BUYER: at the address stated in the Special Terms or, if the Agreement is concluded by or though an agent of the BUYER, to the agent.

To the SELLER: Bunkers International Corp.
110 Timberlachen Circle, Suite 1012
Lake Mary, FL  32746 USA
Fax: (407) 328-0045

18. Assignment

The BUYER may not assign any of its rights or obligations under the Agreement without the SELLER's prior written consent. The SELLER may, however, assign any of its rights and obligations hereunder without the BUYER's prior consent.

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA



**BUNKERS INTERNATIONAL**
Fueling Global Trade

19. Governing Law

These general terms and conditions of sale shall be governed by the laws of the United States of America and the State of Florida, without reference to any conflict of laws or choice of law rules which could otherwise result in the application of the laws of another jurisdiction. The laws of the United States shall apply with respect to the existence of a maritime lien, regardless of the country in which this Agreement is deemed made, the Marine Fuel is delivered or SELLER takes legal action. SELLER shall be entitled to assert its lien, attachment or other rights in any jurisdiction where it finds the Vessel or other assets of BUYER. Any disputes concerning quality or quantity shall only be resolved in the United States District Court for the Middle District of Florida, Tampa Division, or the Circuit Court of Hillsborough County, Florida. Disputes over payment and collection may be resolved, at SELLER's sole option, in the United States District Court for the Middle District of Florida, Tampa Division, or the Circuit Court of Hillsborough County, Florida or in the courts of any jurisdiction where either the Vessel or an asset of the BUYER may be found. BUYER hereby irrevocably submits to the jurisdiction of any such court, and irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum or its foreign equivalent to the maintenance of any action in any such court. BUYER and SELLER waive any right either of them might have to a trial by jury in any legal proceeding arising from or related to the Agreement or these general terms and conditions of sale.

20. Marpol 73/78 Annex VI

Seller does not warrant or guarantee that any physical supplier used to make deliveries to buyer is compliant with Marpol 73/78 Annex VI, regulations 14 and 18, as they apply to marine fuel deliveries, nor will seller be responsible for any costs, charges, or damages incurred by buyer from lack or non compliance of Marpol 73/78 Annex VI by either the physical supplier or buyers vessel personnel. Should physical supplier provide a certificate pursuant to Marpol Annex 73/78 Annex VI, such certificate does not constitute a general warranty of merchantability or fitness for a particular purpose of the marine fuel.

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA



**BUNKERS INTERNATIONAL**
Fueling Global Trade

21. Miscellaneous

To the extent that the General Terms are at variance with the Special Terms, the latter shall govern.

The Agreement may not be modified, discharged or terminated except by an instrument in writing signed by each of the parties hereof.

It is the responsibility of the Buyer and / or Buyer's representative / intermediary to inform vessel's owner of the contract and the Terms and Conditions that apply to the sale from the Seller. If we are not informed immediately, in writing, of owner's rejection, Bunkers International Corp will consider the owner to be aware of and in acceptance or our Terms and Conditions of Sale.

Waivers of performance by one party of any of the obligations of the other party under the Agreement, or of default by such party of any of its obligations hereunder, shall not operate as a waiver of performance of any obligation of such party or a future waiver of the same obligation, or a waiver of any future default.

The terms and conditions of the Agreement shall extend to, be binding upon, and inure to the benefit of, the heirs, successors, administrators, legal representatives, and permitted assigns of the respective parties hereto.

The descriptive headings contained herein are for convenience only and shall not control or affect the meaning or construction of any provision of the Agreement.

The Agreement constitutes the entire understanding and agreement between the Parties hereto and supersedes all prior oral or written agreements, representations and/or warranties.

**TEL:** (407) 328-7757  **FAX:** (407) 328-0045  **EMAIL:** bunkers@bunkersintl.com
110 TIMBERLACHEN CIRCLE, SUITE 1012, LAKE MARY, FLORIDA 32746 USA